The next case on the call is Agenda 12-128300 Matt Chapman v. The Chicago Department of Finance. Counsel, are you prepared to proceed? Good morning, Your Honors. May it please the Court? My name is Elizabeth Tischer, and I represent the Chicago Department of Finance. The Canvas database contains sensitive personal and financial information about individuals who have received traffic and parking violations within the city of Chicago, or citations for parking and traffic violations within the city of Chicago. Mr. Chapman submitted a FOIA request seeking information about how the data is organized in this Canvas database. Disclosure of that information would not shed light on any government conduct, but it would risk exposing private citizens to identity theft and other forms of fraudulent conduct. For this reason, Section 710 of FOIA expressly exempts this type of information, and the Department of Finance properly withheld it under that exemption. The judgment of the appellate court should be reversed. This morning, I will first explain that the records that Mr. Chapman requested constitute a FOIA layout within the meaning of Section 710. I will then explain that FOIA layouts are per se exempt under that section. Turning first to FOIA layout, Mr. Chapman requested an index of tables and columns within each table of Canvas, including the column data type. He also described the information he was requesting as the collection of spreadsheets, which together comprise the database that the Canvas application runs off of. So essentially what Mr. Chapman was requesting was the way that the data is organized within the Canvas database, and that plainly constitutes a FOIA layout within the meaning of Section 710. Where statute does not define terms, this Court looks to dictionary definitions to ascertain the plain and ordinary meaning of those terms. Looking at the term FOIA layout in both whether traditional dictionaries or scientific and technical dictionaries, in this case that term broadly describes the arrangement of data in the file or the blueprint for data storage. So again, all of these definitions point to the same thing, that file layout constitutes the arrangement of the organization of data in the file or in the database. And that is precisely what Mr. Chapman requested in this case. And as we now explain, as I now explain, file layouts are per se exempt under FOIA Section 710. Turning first to the plain language, Section 710 expressly exempts any administrative or technical information associated with automated data processing operations. Following that opening clause in the exemption is a list of ten specific items that fall within that general category of information. And included in that list is the term file layout. And where the General Assembly provides — The standard of review, this is a question of statutory interpretation, Your Honor, so the standard of review would be de novo here. So turning — Counsel, what should I make of the fact that in the opinion, the director of your office indicated that Chapman's request did not seek any of the actual data in the field, such as parking tickets. Was there a request for actual data in the FOIA request? No, Your Honor. There was no request for actual data within the file, but it was essentially a request for how that data is organized within the system. So the way that it was explained in the circuit court is that this would be essentially like a collection of spreadsheets, and it would be how those spreadsheets are organized, the titles of those spreadsheets, the titles of the columns. So it would be that type of information that describes the data, how it's organized in the system. So our position is that disclosing that information, while it wouldn't — while it's not expressly disclosing the information that's contained within the database, it would allow cyber hackers to use that information to have — to access or manipulate the data within the database. And then does that become a fact question? I'm sorry, Your Honor. Do you mean whether it constitutes a FOIA layout? Is that your question, or just whether it would jeopardize — The second question. So the question of whether the specific data in this case would jeopardize the security of the system, so that would be a factual question that would be decided under — or if this Court were to determine that there was a question as to whether this was a FOIA layout or if this Court were to disagree with the Department's position that this is a FOIA layout and is expressly exempt under Section 710, then we would go to that catch-all category for any other information that, if disclosed, would jeopardize the security of the system. So our position is that because the information that Mr. Chapman requested here falls under that definition of FOIA layout and FOIA layout is expressly exempt, that would be a question of law. So only if we end up under that catch-all provision for any other information, then that would be a factual question that we would look to the, you know, the findings of the circuit court. So the court, the trial court had a trial, and there were dueling experts on that issue. Yes, Your Honor. So you're saying that we shouldn't even get to that. All we should be looking at is the statutory interpretation. And if that is as you suggest it is, then it doesn't matter what happened at the trial. Yes, Your Honor, right. Because the, if FOIA layout is expressly exempt, then we, again, we look to whether that term, you know, the definition of that term, it's a question of statutory interpretation, a question of law. And as I explained, our position is that those items are expressly exempt under Section 710, as it expressly exempts any administrative or technical information associated with automated data processing operations, FOIA layout being one of the items that's specifically listed under that statute. And where the general, this Court has explained that where the General Assembly provides a list of examples, and that those items by definition fall within the ambit of the statute. So by the, by its definition, FOIA layout is considered administrative or technical information associated with data processing operations, and they are per se exempt. So in addition to listing those ten specific items, Section 710 does also contain a catch-all provision, as I indicated, for any other information that, if disclosed, would jeopardize the security of the system or its data or the security of the materials exempt under this section. And so if that applies, then there would have to be testimony in a court determining which expert to believe, correct? Yes, Your Honor. If that catch-all were to apply, that's when you, the Court would analyze it on a case-by-case basis, taking testimony as to whether that particular requested information would indeed jeopardize the security of the system. But in this case, we have this catch-all, and construing the statute under fundamental rules of grammar and punctuation, including the last antecedent doctrine which this Court has applied consistently as a rule of grammatical construction, applying that rule, that catch-all that we have at the end of the exemption that, if disclosed, would jeopardize the security of the system or its data, dot, dot, dot. Under the last antecedent rule, that phrase qualifies, modifies only the immediately preceding word or phrase in the statute, and so that here would be any other information. And so, because the last, sorry, to back up a little bit, the last antecedent rule does instruct that the qualifying words or phrases in the statute modify only the immediately preceding words or phrases rather than the more remote terms. So in this case, we do have that qualifying phrase. It only modifies the immediately preceding any other information rather than the ten specifically listed terms in the statute. And you're basically saying that if we find that one of the ten exceptions, if this is a file layout, we don't then have to go to the question of whether or not the catch-all applies, because the catch-all does not apply to those ten exceptions. Correct, Your Honor. By providing those ten specifically listed items and then a catch-all, so the ten specifically listed items, those are the items that the General Assembly has already determined would jeopardize security if disclosed, while the catch-all allows for the exemption of additional information on a case-by-case basis. So only if this Court were to decide that the information requested in a particular case didn't fall within one of those ten specific exemptions, then you would go to the catch-all and, you know, determine on a case-by-case basis whether that requested information would, in fact, jeopardize the security of the system. So our reading of the statute is further supported by the fact, and this is also a fundamental rule of grammar and punctuation, the idea that where a final qualifying phrase is offset by punctuation, such as a comma, that I should say where there is no punctuation offsetting a qualifying phrase, that is further support that that qualifying phrase does only modify the immediately preceding words or phrases in the statute. And elsewhere in Section 7, where the General Assembly intended to subject each listed item to a specific showing, it did offset that qualifying phrase with a comma and then such language as, but only to the extent that, or and disclosure would. And there is no such punctuation in Section 710, and there is no such similar language either. And this reading of the statute is also the only one that gives effect to every term in Section 710. The addition at the end of the catch-all provision of the language, or the security of materials exempt under this section, it assumes that the specifically listed items are, in fact, exempt. And if that were not the case, then that language would be wholly superfluous. And finally, Your Honors, this Court's precedent confirms that file layouts are per se exempt. This Court held in Liber, and then reaffirmed in Mancini, that the specific categories of information listed in Section 7 are per se exempt, and only those items not specifically enumerated are evaluated on a case-by-case basis. And this is also consistent with this Court's precedent in Newton, which, although a non-FOIA case, that holds that where a statute lists examples followed by a catch-all, there is no need to show that the specifically listed items meet the requirements of the statute. They are, by definition, fall within its ambit. And so neither Mr. Chapman nor the appellate court in this case has provided any other reasonable reading of Section 710. Mr. Chapman argues that because the Department conceded that Section 710 is unambiguous, that any arguments for a per se exemption necessarily fail. But that is incorrect. It is the plain language of the statute that makes clear that file layouts are per se exempt. And indeed, the, you know, grammar and punctuation, those are part of the plain language, and it's impossible to read a statute to ascertain its meaning without applying these fundamental rules of grammar and punctuation. And the last antecedent doctrine is one of those rules of grammar. But in any event, these sort of, you know, whether a question, whether a statute is ambiguous is a question, it's a threshold question for the Court to decide and not something that the parties can even concede to. And even so, Mr. Chapman fails to explain why his reading of the statute is the only reasonable reading. And Mr. Chapman also argues that this Court should reject the last antecedent rule in favor of the series qualifier canon, but he offers no sound basis to do so. Indeed, as this Court, the last antecedent rule is a presumption that can only be overcome by other indicia of meaning, and this Court has consistently applied the last antecedent rule as a rule of grammatical construction. There is indeed, other courts have indeed applied the series qualifier rule in lieu of the last antecedent doctrine, but that applies only when the terms of the list to the – it's a small list with terms that are parallel, simple, and commonly seen together, such as, for example, laws, treaties, and constitutions of the United States. And we have no such, you know, elegant or artful phrasing in this case. Section 710 contains a very long list of ten terms. Many of them are not even, you know, we don't see together, probably wouldn't even be familiar to the average reader, such as, you know, we have load modules, object modules, those types of terms that are more technical alongside more commonly understood terms, like software and user manuals. Most of the words are – terms are one or two words, but we also have an 11-word phrase thrown in there that begins with the nominalization, so that, you know, the text and the – the length and the syntax of these words vary. So simply put, the reader has a lot of work to do to get through the list of terms and comprehend them, let alone carry the modifier across all of those terms. And the U.S. Supreme Court has explained in Lockhart that where – where the reader has – where it takes a little bit more mental work to even comprehend the list of terms, it's a heavy lift for the reader to carry that final qualifying phrase across all the terms in that statute, and in that case, then, the last antecedent would apply. Mr. Chapman also relies on the narrow construction rule, but that rule cannot be used to rewrite the clear statutory language that we have in this case. And even in FOIA cases, broad language, even when construed narrowly, is still broad language. And furthermore, the rule that ambiguity must be resolved in favor of disclosure applies only after other aids of construction cannot resolve the ambiguity. And here we've got, you know, the – we've got the plain language supported by fundamental rules of construction – fundamental rules of grammar and punctuation. So we apply the statute as written, applying those rules before we even get to whether  or not there is ambiguity or that narrow construction rule. Mr. Chapman cannot use the narrow construction rule to overcome that plain language and to, you know, reject any reading that is inconsistent with the – with his reading of the statute. And, Your Honor, generally, you know, the General Assembly included the section – section 7 exemptions to protect – to protect against invasions of personal privacy, cybersecurity tax, and other harms. Those exemptions must be given effect and construed according to their plain language. As I said, the Canvas system contains sensitive personal and financial data on anyone who has received a parking or traffic citation within the City of Chicago. And in the past 40 years since FOIA was enacted, cyber hackers have become even more sophisticated, making the protections provided by Section 701 all the more critical to prevent identity theft and other forms of fraud. And for these reasons, the information that Mr. Chapman requested is per se exempt under Section 710, and the Department of Finance properly withheld it. And as for our – as for our alternative argument, that the Department met its burden of showing the requested information would jeopardize the security of the Canvas system, we rest on our briefs. Therefore, we ask this Court to reverse the judgment of the appellate court. Thank you. Thank you very much, ma'am. Counsel to the appellate. May it please the Court. My name is Merrick Wayne on behalf of the appellee, Matt Chapman. The question today before the Court is whether under the Freedom of Information Act, the disclosure of schema would jeopardize the security of a database. That is the only question framed by the pleadings in this case. All other issues that have been raised by the City of Chicago were first raised at the trial court level or here on appeal. Mr. Chapman here is requesting the database schema from the Canvas system. This is the parking and traffic citation database that the City of Chicago uses to track those tickets. Mr. Chapman made this request, although it is not required from this data's purpose. This does allow the public to know what types of information the City of Chicago is tracking about those who get parking and traffic citations. And having this schema would allow him to better, not just him, but the entire public to better understand what information the government is tracking about us. Schema, practically speaking, is represented as an Excel spreadsheet. Counsel, I'd like to ask you the same question I asked your opponent. What are you contending the standard of review is? So there are two standards of review here, Your Honor. While counsel spoke at length about the statutory interpretation questions, that is given a de novo review. However, any factual questions here in this case would be the manifest way to the evidence standard. We did have a trial with competing expert witnesses, and the trial court is in the best position to evaluate the credibility of those witnesses. And here the trial court found that plaintiff's witness, expert witness, Thomas Toczek, who is an expert with over 25 years in this field of security and database security, found Mr. Toczek to be credible, and that disclosure would not jeopardize the security of the database. Mr. Toczek testified that he could not think of in any way that schema would provide him any advantage in launching an attack. He would not use it. He would not seek for it beforehand. All schema is is a product of the attack after an attacker is already in. And an attacker can only get in if there's vulnerabilities in the system, which the city's own expert witness testified there are none. And all of that... Counsel, let me ask you a question. So, of course, the statute does exempt file layouts. So that leads to the question, is a file layout, is a schema a file layout? Are they the same thing? Yes. So to answer that question, all the inferences that the trial court drew from Mr. Toczek's testimony should be given the manifest way of the evidence. Regarding your question, Justice White, is that there was no finding on whether schema was a file layout. Prior to the trial beginning on that very morning, the city put forth an argument that they only needed to show that it was a file layout and that there was no showing needed for what jeopardized. The trial court rejected that, and that question is decided on a de novo review. However, there is competing evidence at trial about whether schema is a file layout. Now, the city's expert witness testified that it is both a file layout and a source listing. He then gave a definition of file layout that completely contradicts the definition that the city has put forward today in its argument and in its briefs. The definition they put forward today is also different than the definition that was put forth in the appellate briefing. At trial, the city's witness testified that a file listing would be instructions for the database on how to write the data. File listing or file layout? File layout, Your Honor. Source listing is another term listed. File listing. Oh, I apologize for that. Don't confuse me. My job here is not to do that. I'm sorry. Can you, what's your definition of file layout? So, file layout is, first off, it has not actually been defined. At the trial court, by any witnesses, I will define it for you. But if a definition is needed, it should be remanded for those witnesses, for expert witnesses to define it. So, file layout is concrete instructions. This is defined as binary level, so ones and zeros, explaining how data reads and writes files. While schema, what we're dealing with here, is abstract. It's the types of data. So, it's not the ones and zeros of the name and the race and the address. It's just last name, first name. It's this abstract, higher level data, which our position falls under the any other information portion of the statute. So, you're saying that what you are seeking is not file layout? Yes, Your Honor. And where are you getting your definition of file layout? Your Honor, that definition of file layout, both comes from the definition that the city's witness put forward at trial. It also comes from other affidavits that Mr. Toczek has submitted in other cases involving database schema between Mr. Chapman and the City of Chicago. Not this case, particularly, as this is not the only one dealing with it. But the point, though, is that there is no advantage to having the schema, if you're an attacker, before the attack. They do not seek it. They do not use it. I mean, I think we all are kind of struggling with the words. Sure. Our first issue in terms of statutory interpretation is legislative intent. What does the legislature mean when they use this term? Chief Justice, the legislature intended for FOIA to be a pro-disclosure statute. Records are presumed to be open to the public, and this Court provides a narrow interpretation of the FOIA statute in determining whether records are exempt. It is the public's- They exempted file layout. They did not exempt file layout, Your Honor. They exempted file layouts if disclosure would jeopardize security of the FOIA statute. But they used that term, so somehow we have to figure out what that term means. Yes, Your Honor. They did use the language including, but not limited to, to be illustrative of what would be administrative or technical information. But the exemption itself is for administrative or technical information that if disclosed would jeopardize the security of a database. Now- No, we still don't know what file layout means. That's where we have to start. Your Honor, no. It doesn't start with what a file layout is because- It exempts the file layout. So do you agree that if we were to determine that this, what you're requesting is a file layout, isn't that the end of the inquiry? No, Your Honor, because if disclosed would jeopardize, modifies file layout. Okay, so let's assume that we disagree with you on that and we determine that we just need to define file layout and if that is, if it is a file layout, then it's exempt. So what does file layout mean? That should, it should be remanded to the trial court for a trial where expert witnesses can present testimony on the definition of file layout. So that's not a question of law? It is not, Your Honor, no. It is a highly technical term and defendant does not present any case law to support its position that it can just use dictionary definitions to define these highly technical terms. In the same way we would not define software- Wouldn't we say, in something a little less technical, that it's ambiguous? We're not sure what it means. So if it's ambiguous, we can look to other sources, correct? Dictionaries, for example. In this instance- If it's used in a legislature that's ambiguous, we're allowed to look at other sources. We're not arguing that the statute's ambiguous. We are arguing that schema falls under any other information and that it is, it must be disclosed unless it would jeopardize disclosure and that is a high burden for the City of Chicago to prove, to show that it would jeopardize. We're not even in the file layout question right now because they, because we're not even, no one is saying that this is an unambiguous, or sorry, nobody is saying that this is an ambiguous statute where we need to apply grammatical or statutory canons of construction to make a portion of the statute per se. It is a presumption that the FOIA statute is pro-disclosure and reading it in a way where the presumption is that it's not in favor of disclosure is contrary to this Court's case law, most specifically the Southern Illinoisian, the Illinois Department of Public Health. That case dealt with cancer patient, the cancer registry patient data. We're not even asking for data in this case. And yet, in Southern Illinoisian, this Court applied the narrow construction rule and found that even data about patients in that case could be disclosed. Now, of course, not all data was, but even applying this narrow construction rule, more information was released than we are even seeking in this case here. So what you're saying is that the first step is to look at whether or not any disclosure would jeopardize security of the system. And that is something that has to be determined in every case, no matter what, whether it's schema, file layout, no matter what it is? Yes, Justice O'Brien. If it's schema, a file layout, source listing, an employee manual, software, all of that must be subject to the if disclosed would jeopardize question. Counsel, tell me how we can determine if it's going to jeopardize security if we don't know what file layout means. We've got to know what file layout means. The Court does not need to know what file layout means because there's no dispute that if the record, if the record falls within any other information, then would jeopardize modifies it. And that's where we are currently, is that... So was your FOIA request, does it come within the purview of being a file layout? No, and there's no evidence at trial that would suggest that. If anything, there's competing evidence showing that it does and it does not, as Mr. Toczek squarely testified, that it is not a file layout. So if anything, it should be remanded for further inquiry on that question. Are you saying that there is no set of circumstances where jeopardy of the security of a system can be per se? It has always got to be something that has to be looked at each and every time a request like this is made? Yes, Your Honor. The items listed in Section 710 are not per se exempt. They are just illustrative of the types of administrative and technical information that could possibly be exempt only after there is a showing that it would jeopardize if disclosed. Counsel, then how do you explain the final phrase for the security of materials exempt under this section? That is, it would be... So it would be the same as saying that the... whether the security of the database itself or the security of the data within the database would be at jeopardy of being exposed. And the answer for both, whether it's the Canvas system itself or the data within the Canvas system would be jeopardized, the answer is no. And the trial court found that Mr. Toczek's testimony was credible at trial. That disclosure of the schema would not jeopardize any of that. And this Court should afford the manifest way of the evidence to that finding. Some other points that Defendant raised that I would like to address. Again, we are not seeking personal and sensitive information. No data from any individual will be disclosed through this FOIA request. This is merely the categories and the information that the city is tracking about the public. Additionally, while they point to many grammatical rules within their argument, again, these are only applied if the statute is found to be ambiguous. No one here is arguing that the statute is ambiguous. The appellate court did not find it to be ambiguous. As I've argued, it is presumed that records are to be open to the public and that the reasonable interpretation of the FOIA statute is that there must be some showing of harm in order to withhold records because they are presumed to be open. If the whole issue is that last clause, jeopardy of danger to the public, why didn't the legislature just say that? Why did they list these ten specific things? They must have some meaning in the statute. Your Honor, they were just illustrating the types of administrative or technical information. As was noted in both parties' briefings, of course, the legislator may not have known the extent to which technology would develop. And they certainly did acknowledge that in the preamble of the FOIA statute where they said that technology may advance at a faster rate than the legislature may update the statute. However, in that case, the General Assembly said that the FOIA statute should still be interpreted in favor of the policy that the public is able to access these public records and able to fulfill their duties in making informed political judgments and decisions about how the government is being conducted in their best interest. And one way that would be very easy for the public to be able to fulfill their duty, as the General Assembly described, is to know what types of information the government is tracking about them. And that's what this case comes down to, is what information the government has about the people and what types of information they're tracking. Some other points to make is there is some argument in the briefs about what the meaning of wood jeopardize means, whether it's a possibility of harm. Now, we do argue in our briefs that that is a much broader interpretation of the statute that doesn't follow the narrow construction rule. However, even if this Court agrees with the city that wood jeopardize is a very low standard to meet and they only need to show a possibility of harm, it still fails in this case because of the factual evidence and factual findings that were made at trial by this trial court. All their theories of harm in this case come down to an attack, noise, speed, and attraction to an attacker. For the attack itself, as I've stated many times, the testimony squarely disputes that there is in no way that schema would help an attacker in actually launching the attack. Only incompetently built and vulnerable systems can be attacked, which the city's own expert admitted that Canvas is a competently built system. And that's afforded the manifest way to the evidence standard. The next issue is noise. That is not even a theory that defendant raises anymore. They only raise that at trial and at the appellate level. As plaintiff's expert witness testified, that doesn't matter here. The amount of noise you make, attackers don't care about that because there's lots of noise. And the trial court's finding that to be credible is given the manifest way of the evidence. The city now raises an argument about the speed and how precisely an attacker can move about. That is not framed at all by the evidence at trial. They do not rely on testimony to support that. And it is just a new argument for this court. And finally, being attractive to an attacker because this contains people's personal information potentially or payment information is another argument that they raise. However, that was also addressed at trial where the city admitted that the general information about what's in the Canvas is not a secret. We've been talking here today that it's about parking and traffic citation information. We already know that. It's on their website. It was in the RFP for when they built the Canvas system. And the trial court acknowledged that that information is already public and that should be afforded the manifest way of the evidence. Additionally, plaintiff's expert at trial testified that you can obtain this information through the HTML source code. So the scheme is not even the only way to find out generally that a database would have some general type of information. And again, that's afforded the manifest way of the evidence. Just so I'm clear before your red light goes out. You're saying in every single case where there's a request for some kind of administrative or technical information associated with automatic data processing operations, there has to be a trial to determine whether that specific administrative or technical information jeopardizes the security of the system. In every single case, there has to be a trial. There doesn't have to be a trial. Court cases are typically resolved on summary judgment where parties can present affidavits. It's always going to be a fact question that has to be resolved. There was a fact question raised here in summary judgment about the value to an attacker. And the purpose of the trial was to further... I'm saying in every single request for administrative or technical information associated with the automated data processing operations. There has to be a factual determination whether that information would jeopardize the security of the system in every single request. Is that right? Yes, Your Honor. I have nothing further to add unless I can be of help to the Court to answer any other questions about this. I understand that it can be quite daunting with the databases. I just want to clarify your answer to the Chief's question. So when a FOIA request is filed regarding the Canvas system, in every single one of those, a court proceeding would have to be initiated in order to determine whether or not the material you're seeking is exempt. Is that what you're saying? Well, this Court can also set precedent by legally determining... No, I'm just asking you, as it stands now and as you interpret the law, is that your position? Yes. Currently there are other cases that are pending trials depending on the outcome of this. Thank you. Thank you, Your Honors. Your Honors, I would just like to make a few quick points. Responding to the whether FOIA layout is a question of law or a question of fact that can be resolved at trial, a question of whether FOIA layout is a question of law. The definition of FOIA layout is plainly a question of law. It's a question of statutory interpretation. And this Court has said multiple times that where a term is undefined in the statute that the Court looks to dictionary definitions and other such sources to define those terms. And in this case, whether this term is considered a term that the average person would understand or whether it's considered a term of art in the sort of computer field, either way, dictionary definitions are appropriate for defining those terms. And in this case, we did provide both definitions from sort of traditional English dictionaries defining file and layout separately. And we provided definitions from a scientific and technical dictionary, which would be appropriate for defining these particular terms of art. And in both situations, the definitions that we have come up with all point to the same thing, that a FOIA layout basically describes the way the data is organized within the database. Expert testimony is not appropriate for defining these terms. Expert testimony is really only appropriate in these types of circumstances if there are no other sources with which the Court can derive the plain and ordinary meaning of terms of art, or I should say how those terms are used within the particular industry. So we do look to treatises, encyclopedias, dictionaries that define scientific and technical terms, perhaps prior case law defining those terms if we're confronted with a term of art. In this case, we do have those sources and we do have definitions from those sources. So it's your contention that whether any of the information that is contained within the file layout, whether or not it is potentially subject to cybersecurity attack or not, doesn't matter. It is exempt. Yes, Your Honor, because this is the type of information that the General Assembly in enacting FOIA has already determined would, you know, if disclosed, jeopardize the security of the system. It's really only if it falls under that catchall that we're going to assess it on a case-by-case basis. So the information that Mr. Chapman did request here, as we explained, it does fall under that broad definition of file layout. And contrary to Mr. Chapman's assertion that the definition of file layout that Mr. Coffing, who testified on behalf of the Department of Finance, that his explanation of file layout at trial contradicts the definitions that we have provided in our briefs. And that is simply not true, because Mr. Coffing did testify that file layout basically is the structure of the database or the instructions that the database uses to, you know, organize and construct the data. And so that all falls under that broad definition of how the data in the database is organized. And again, that's a question of law. So to the extent that expert testimony is even necessary in this type of case, it would be only if we didn't have another source to provide that definition, and then we could look to expert testimony to determine how that term is understood in the industry. But competing expert testimony cannot be used to rebut a definition that we've already derived from a source like a technical dictionary or something of that nature. I also want to emphasize that the narrow construction rule that Mr. Chapman cites, and I just want to make clear that this Court has said, has held in LIBOR, and again reaffirmed in Mancini that, you know, despite the narrow construction rule, if specifically listed, you know, the terms that are specifically enumerated, the categories information specifically enumerated within Section 7, within those exemptions, that that information is per se exempt without any need to assess it on a case-by-case basis to determine if there is harm. So we do have precedent from this Court explaining that even if we have very specific, you know, listed examples, per se exemptions, we do not use, we do not apply the narrow construction rule to argue for disclosure of that material. And again, Mr. Chapman has provided no other reasonable reading of Section 710. He argues that the city has conceded, that the statute is unambiguous, but that is not an answer to the question here. He has not provided any other definition or any other interpretation of Section 710 to suggest that the only reasonable reading is for disclosure of these materials. The narrow construction rule is not something that we use at the threshold. We have to read the plain language of the statute first. It always starts with the plain language to determine legislative intent, and only if we cannot discern it from the plain language, and that includes, you know, rules of grammar, rules of punctuation, looking at the text and the structure of the statute, only at that point, if we can't resolve an ambiguity, do we apply the narrow construction rule. And I believe, if there are no further questions, Your Honor. I have one further question. Yes, Your Honor. Just to be clear. So your contention is that schema is not, that it is the same as the file layout, that it is not a separate type of information that would fall into the catch-all. Is that correct? Well, Your Honor, in this particular case, we're looking at how, at the, what the FOIA request asked for, what Mr. Chapman's request asked for, and how Mr. Chapman described that information. So Mr. Chapman's witness did describe it as a database schema, but how he described it isn't relevant to whether it constitutes a file layout. What we're looking at is the definition of file layout and how the specific information, you know, whether the specific information that he requested falls under that definition. But also, you know, to the extent that this could be categorized as, or characterized as database schema, looking at that in, you know, in common dictionaries as well, it all points to the same direction. You know, a database schema is essentially a plan or an outline or a framework for a database. And that all points back to the same idea, that this is all about how the data is organized and arranged in the Canvas system. So you are saying that, at least within the context of this current request, the request for the schema is a request for a file layout? Yes, Your Honor, and that would be per se exempt. Thank you, Your Honors. And we ask for the judgment of the appellate court to be reversed. Thank you very much. This case, Agenda Number 12, Number 128300, Matt Chapman v. The Chicago Department